## PEOPLE v GUNTER

### OPINION OF THE COURT

1. CRIMINAL LAW—TRIAL—JOINDER OF DEFENDANTS.

   Joinder of criminal defendants for trial is usually within the discretion of the court; the general rule is that a defendant does not have a right to a separate trial.

2. CRIMINAL LAW—JOINT TRIAL—SEPARATE TRIAL—MOTIONS.

   A defendant in a criminal case must show that his substantial rights will be prejudiced by a joint trial in order to support a motion for a separate trial.

3. CRIMINAL LAW—SEPARATE TRIAL—MOTIONS—DISCRETION OF TRIAL COURT—ANTAGONISTIC DEFENSES—SUPPORTING AFFIDAVITS.

   There was no abuse of a trial court's discretion in denying defense motions for separate trials for two criminal defendants where the motions were based only on the allegations of the defendants' attorneys that interviews with the defendants disclosed the probability of antagonistic defenses, but supporting affidavits provided no indication of what those defenses would be or what factual basis existed to believe prejudice would occur and where the defendants' testimony at trial was not inconsistent, supporting the view that no prejudice occurred.

4. APPEAL AND ERROR—CRIMINAL LAW—IDENTIFICATION—PRETRIAL IDENTIFICATION—DUE PROCESS—SUGGESTIVENESS OF PROCEDURE.

   The Court of Appeals must determine if a pretrial lineup was so

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 17, 18.
[2] 75 Am Jur 2d, Trial § 20 *et seq.*
[3] 75 Am Jur 2d, Trial § 21.
[4–6] 29 Am Jur 2d, Evidence §§ 371–373.
[7, 9] 29 Am Jur 2d, Evidence § 320 *et seq.*
[8] 29 Am Jur 2d, Evidence §§ 329, 330.
[10, 11] 75 Am Jur 2d, Trial §§ 719, 743, 744, 781.
[12] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
[13] 21 Am Jur 2d, Criminal Law § 583 *et seq.*
[14–16, 18, 19] 21 Am Jur 2d, Criminal Law § 585.
[17] 75 Am Jur 2d, Trial §§ 743, 744.

impermissibly suggestive as to give rise to the substantial likelihood of irreparable misidentification where it is alleged on appeal that the lineup was so suggestive as to taint any subsequent identification at trial.

5. CRIMINAL LAW—IDENTIFICATION—PRETRIAL IDENTIFICATION—SUGGESTIVE PROCEDURE—BURDEN OF PROOF.

A defendant who claims that a pretrial identification procedure was impermissibly suggestive has the burden of proof where the defendant was represented by counsel at the pretrial identification.

6. CRIMINAL LAW—IDENTIFICATION—LINEUP—CLOTHING—SUGGESTIVE PROCEDURE.

The appearance of a defendant in a lineup wearing the same clothing as when arrested shortly after the commission of a crime is not of itself indicative that the lineup is impermissibly suggestive.

7. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—IMPEACHMENT—DISCRETION OF TRIAL COURT.

A trial court must positively indicate and identify its exercise of discretion when ruling on a criminal defendant's motion to preclude the use of his prior convictions for impeachment purposes.

8. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS.

The Court of Appeals will not reverse a defendant's conviction simply because the defendant's prior convictions, evidence of which was admitted for impeachment purposes, were remote in time.

9. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—IMPEACHMENT—SIMILAR CRIMES.

A trial court need not exclude evidence of a defendant's prior convictions as impeachment evidence merely because those convictions involved crimes of a nature similar to the crime charged.

10. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSE OF INTOXICATION—SPECIFIC INTENT.

An instruction to the jury on the criminal defense of intoxication which stresses a defendant's capacity to form the necessary specific intent and not whether the defendant had in fact entertained the specific intent is a defective instruction.

11. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSE OF INTOXICATION—SPECIFIC INTENT.

An instruction to the jury in a criminal trial on the defense of intoxication which emphasizes the need to find that a defendant had the requisite specific intent and not just the capacity to form the intent is an instruction which clearly informs the jury of the standards they should use and is a proper instruction.

12. CRIMINAL LAW—EVIDENCE—RELEVANCY—STANDARD OF REVIEW—DISCRETION OF TRIAL COURT.

The standard of review of a trial court's finding of evidential relevancy is whether the proffered evidence has a tendency to effect belief in the mind of a reasonably cautious person who should receive it and weigh it with judicial fairness; the trial judge should be allowed a reasonable discretion in such cases and his determinations should not be set aside except in a clear case of abuse.

13. CRIMINAL LAW—SENTENCING—JUDICIAL DISCRETION.

Sentencing within statutory limits is a matter for the exercise of judicial discretion.

14. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORT—MISINFORMATION IN REPORT.

The ambit of a presentence report compiled by a probation officer which is provided to the court for the purposes of its sentencing decision is necessarily broad; the only real limit on what may be included in the presentence report is that the report should not contain inaccuracies or clear misinformation.

15. CRIMINAL LAW—SENTENCES—PRESENTENCE REPORT—ILLEGAL ACTIVITIES.

A presentence report may include information concerning a defendant's illegal activities even though such activities may not have resulted in the defendant being charged or convicted.

16. APPEAL AND ERROR—CRIMINAL LAW—SENTENCES—PRESENTENCE REPORT—SUSPICION OF ILLEGAL ACTIVITY.

The Court of Appeals should not remand a matter for resentencing because of a vague notation in a defendant's presentence report as to mere "suspicion of illegal activity" where there is no affirmative indication on the record that the court relied upon such information in its sentencing decision and where the defendant has not properly presented the issue on appeal.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY D. C. RILEY, J.

17. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSE OF INTOXICA-
    TION—APPEAL AND ERROR.

    *A defendant's conviction should not be reversed on the basis of
    an allegedly improper instruction to the jury on the defense of
    intoxication where defense counsel invited the supposed error
    by submitting the assailed instruction to the court and by
    applying the instruction in his closing argument.*

18. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORT—SUSPICION
    OF ILLEGAL ACTIVITY.

    *A defendant's sentence should be vacated and the matter re-
    manded for resentencing where defense counsel, after reading
    the defendant's presentence report, specifically requested that
    the court not consider the matters in the report suggesting that
    the defendant had been suspected of illegal activity and where
    the court failed to respond to defense counsel's objection and
    proceeded to impose a statutorily permissible sentence.*

19. CRIMINAL LAW—SENTENCES—PRESENTENCE REPORT—SUSPICION OF
    ILLEGAL ACTIVITY.

    *A request by defense counsel that a trial judge disregard allega-
    tions in a presentence report about a defendant's suspected
    illegal activity shifts the onus to the court to either state that
    it is disregarding the allegations or to determine whether the
    defendant disputes the charges; if the defendant denies involve-
    ment in "illegal activity" the court may not rely upon the
    information contained in the presentence report unless it is
    amplified by information such as to be persuasive of the valid-
    ity of the charge there made.*

Appeal from St. Clair, Ernest F. Oppliger, J.
Submitted March 7, 1977, at Detroit. (Docket No.
26416.) Decided July 6, 1977.

Louis B. Gunter and William T. Griffith were
convicted of armed robbery. Defendants appeal.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Peter E. Deegan,*
Prosecuting Attorney, and *Peter R. George,* Chief
Appellate Attorney, for the people.

*Edson & Thompson,* for defendant.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and D. C. RILEY, JJ.

V. J. BRENNAN, P. J. Defendants Louis B. Gunter and William T. Griffith were jointly tried before a St. Clair County jury on the charge of armed robbery, contrary to MCLA 750.529, MSA 28.797. On May 2, 1975, the jury convicted both defendants of the charged offense. On June 9, 1975, defendant Griffith was sentenced to a term of not less than 7-1/2 years nor more than 15 years. On June 16, 1975, defendant Gunter was sentenced to a similar term. Both appeal to this Court as of right under GCR 1963, 806.1.

Defendants were charged with the commission of an armed robbery which occurred at the Vega Motel in Port Huron, Michigan, on October 19, 1974. Albert Myles, the manager of the Vega Motel, testified that on the night of the alleged offense he was at the Vega Motel in the company of his daughter and her friend and two grandchildren. He stated that he heard the doorbell ring and went to the door to find a man standing just outside the door asking for a room. He later identified this man as defendant Griffith.

Myles testified that Griffith took the cash box while armed with a handgun. Shortly afterward another man entered; but, because Myles was only able to get a quick glance at the second man, he was unable to identify him. Myles testified as to various objects which were taken by the perpetrators of the offense and identified certain objects found in the defendants' car as those which were taken from him on the evening in question. Phyllis Dorland, the daughter of Myles, and Thomas Gam-

ble, a friend of Ms. Dorland, testified in substantial corroboration of the testimony as given by Myles.

Deputy Sheriff Edward D. Lane of the St. Clair County Sheriff's Department testified that, shortly before the commission of the robbery, he received a call which indicated that there were two black males in the area acting suspiciously. In the company of his partner, Officer Lane proceeded to follow the black males to the site of the Vega Motel. After about ten minutes had elapsed, defendants were observed running from the motel and leaving at a high rate of speed. The two officers followed, and a chase ensued in which the defendants were finally caught. Certain items subsequently found missing from the Vega Motel were found in the defendants' car.

Both defendants elected to testify in their own behalf. The substance of their testimony was that neither was involved in the robbery committed at the Vega Motel. Testimony was further elicited from both defendants to the effect that they were, due to the influence of drugs or alcohol, somewhat intoxicated during the evening in question. Certain other witnesses testified on behalf of the defense.

On appeal, defendants raise all allegations of error jointly, save one claim which relates to defendant Griffith alone. We will treat the questions dealing with defendants jointly first.

Defendants initially argue the trial court abused its discretion by denying their motions for severance and separate trials of their causes.

Generally, defendants do not have a right to separate trials in this state. *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976). Further, joinder of defendants for trial normally rests within the sound discretion of the trial court. MCLA 768.5; MSA 28.1028. *People v Smith,* 73 Mich App 463;

252 NW2d 488 (1977), *People v Hurst, supra,* at 6. In moving for separate trials, defendants must clearly, affirmatively and fully show that substantial rights will be prejudiced by a joint trial. *People v Scott,* 61 Mich App 91, 94; 232 NW2d 315 (1975). See *People v Schram,* 378 Mich 145, 156; 142 NW2d 662 (1966).

Both defendants' counsel in this case moved for separate trial based only on the allegations that interviews with their clients disclosed the probability of antagonistic defenses. Supporting affidavits provided no indication of what those defenses would be or what factual basis existed to believe prejudice would occur. Under similar circumstances, no abuse of discretion has been found. *People v Markham,* 19 Mich App 616, 633, 635; 173 NW2d 307 (1969), *People v Kynerd,* 314 Mich 107, 112; 22 NW2d 90 (1946). Further, defendants' testimony at trial was not inconsistent, supporting the view that no prejudice occurred. *People v Behm,* 45 Mich App 614, 619; 207 NW2d 200 (1973), *People v Schram, supra,* at 156. We find no abuse of discretion.

Defendants contend secondly that the trial court should have excluded all eyewitness identifications of defendants due to the contingent prejudicial effect of a pretrial lineup which was allegedly unduly suggestive and unfair.

Where the pretrial lineup is allegedly so suggestive as to taint any subsequent identification at trial, we must determine if the lineup was so impermissibly suggestive as to give rise to the substantial likelihood of irreparable misidentification. *People v Lee,* 391 Mich 618, 626; 218 NW2d 655 (1974), *People v Rivera,* 61 Mich App 427, 431; 232 NW2d 727 (1975). Defense counsel carries the burden of proving the lineup was impermissibly

suggestive where defendant was represented by counsel at the lineup. *People v Rivera, supra,* at 431, *People v Curtis,* 34 Mich App 616, 617; 192 NW2d 10 (1971).

In this case, defendants claim the lineup was impermissibly suggestive because (1) they were forced to appear before the witnesses in the same clothes they were arrested in the night of the robbery and (2) with respect to defendant Griffith, all participants in the lineup, although of the same race, were darker skinned than defendant.

We have stated that wearing the same clothing as when arrested is not of itself indicative that a lineup is impermissibly suggestive. *People v Jones,* 44 Mich App 633, 637–638; 205 NW2d 611 (1973). We find no error here where witnesses had 20 minutes to 1/2 hour in which to observe defendants and where there is no record evidence that identification of defendants depended substantially on the clothing they wore on the night of the robbery.

Neither do we find defendant Griffith's contention concerning the lightness of his skin persuasive. *People v Herrera,* 42 Mich App 617, 620–623; 202 NW2d 515 (1972). We do not believe the lineup was impermissibly suggestive. We find no error in the trial court's subsequent rulings or actions.

Defendant next claims that the trial court abused its discretion by refusing to suppress evidence of the defendants' prior convictions.

In deciding whether to admit evidence of prior felony convictions for purposes of impeachment, the trial court must exercise and identify its discretion in doing so. *People v Trombley,* 67 Mich App 88, 94; 240 NW2d 279 (1976). We find the court did adequately exercise its discretion on the

record. *People v Pleasant,* 69 Mich App 322, 328;
244 NW2d 464 (1976).

However, defendants argue that the court
abused its discretion by admitting defendant Gun-
ter's conviction for breaking and entering in 1966
and defendant Griffith's conviction for breaking
and entering in 1967. *People v Jackson,* 391 Mich
323, 332–333; 217 NW2d 22 (1974).

We will not reverse a conviction simply because
the prior convictions admitted by the trial court ·
were remote in time. See Proposed Michigan Rules
of Evidence, Rule 609(b) (evidence not necessarily
inadmissible where, as here, neither conviction
was ten years old or more at the time of the
present trial). Furthermore, we have held that the
trial court need not exclude prior convictions
merely because they involved crimes of a similar
nature to the crime charged. *People v Townsend,*
60 Mich App 204, 206; 230 NW2d 378 (1975). We
do not find the prior conviction in this case so
remote in time as to be unfair or improper to
admit. See *People v Penn,* 71 Mich App 517, 519–
521; 248 NW2d 602 (1976) (where the convictions
had occurred some 20 years before). We must also
believe from statements on the record that the
court properly admitted the prior convictions pri-
marily because of their relation to defendants'
credibility. We find no abuse of discretion here.
*People v Kelly,* 66 Mich App 634, 637; 239 NW2d
691 (1976).

Defendant contends fourthly that the trial court
erred reversibly in charging the jury on the de-
fense of intoxication.

We recognize that the Michigan Supreme Court
has found defective an instruction on the defense
of intoxication which stressed the defendant's ca-
pacity to form the necessary specific intent and

not whether defendant had in fact entertained the specific intent. *People v Crittle,* 390 Mich 367, 372; 212 NW2d 196 (1973).

However, *Crittle* did not prohibit giving any instruction at all in terms of defendants' capacity to form criminal intent because of intoxication. In fact, we believe such an instruction is necessary in order to inform the jury that they must determine whether the purported intoxication would prohibit a person from forming a criminal intent. However, what is also necessary to avoid improperly misleading the jury is the additional charge that, regardless of intoxication, defendant must in fact be found to have formed a specific criminal intent before conviction is justified.

In the case before us, the trial court instructed the jury regarding intoxication on three occasions.[1] The pertinent language of the charge in question is the following:

"If you find the Defendants committed the offense but that they were under the influence of intoxicating liquors or drugs to such an extent that they were unable to form the necessary criminal intent, then you cannot find the Defendants guilty of the crime requiring a specific intent."

The court here emphasizes the need to find the specific intent, not just the capacity to form it. Furthermore, prior to this language, the court instructed as follows:

"Now, I am going to instruct you on intoxication as it might apply to this question of intent or knowledge of wrong. One of the necessary elements to constitute the offense of armed robbery is a felonious intent enter-

---

[1] The trial court instructed in essentially the same manner in each of the three instances.

tained by the Defendants at the time it is claimed they committed such offense. While it is true that intoxication cannot excuse a crime in general, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed *when the intent did not exist.*" (Emphasis added.)

These intoxication and intent instructions clearly informed the jury of the standards they should use—standards that have been repeatedly approved. *People v McKenzie,* 67 Mich App 356, 359–360; 241 NW2d 205 (1976), *People v Parsons,* 59 Mich App 79, 82–86; 228 NW2d 852 (1975), *People v Scott,* 55 Mich App 739, 741–746; 223 NW2d 330 (1974).

We also observe that defense counsel not only submitted and approved the instructions under these standards, but actively argued them to the jury in closing. We find no error requiring reversal here or anywhere else incident to the court's charge to the jury.

Defendant next claims the trial court erred by admitting various items of demonstrative evidence.

The court admitted a gun, a knife, a comb, a cash box and a wallet. The various witnesses properly identified these items or similar as being the ones involved in this crime. We review the trial court's finding of evidential relevancy by the following standard:

"How are we to evaluate the relevancy of the proffered evidence? Defendant has cited this passage by Justice COOLEY in *Stewart v People,* 23 Mich 63; 9 Am Rep 78 (1871), concerning the use of impeachment evidence:

" 'The proper test for the admissibility of evidence ought to be, we think, whether it has a tendency to affect belief in the mind of a reasonably cautious per-

son, who should receive it and weigh it with judicial
fairness.' (p 75.)

"Justice Cooley further said the judge 'ought to be
allowed a reasonable discretion in such cases' which
'ought not to be set aside except in a clear case of
abuse'. (p 76.)" *People v Howard,* 391 Mich 597, 603; 218
NW2d 20 (1974).

We find reasonable admission of the gun, knife
and comb. See *People v Howard, supra,* at 603.

We also see no error in admitting the cash box
and wallet. *People v Kremko,* 52 Mich App 565,
573; 218 NW2d 112 (1974).

Defendant Griffith last argues that resentencing
is necessary due to the trial court's consideration
of allegedly improper and inaccurate information
contained in the presentence report.

Within statutory limits, sentencing in Michigan
is a matter for the exercise of judicial discretion.
*People v Lee,* 391 Mich 618; 218 NW2d 655 (1974).
We also recognize that the ambit of the presen-
tence report compiled by defendants' probation
officer which is provided to the court for purposes
of its sentencing decision is necessarily broad.
*People v Burton,* 44 Mich App 732, 733-735; 205
NW2d 873 (1973). The only real limit on what may
be included in the presentence report is that the
report not contain inaccuracies or clear misinfor-
mation. *People v Lee, supra,* at 636-637.

In this case, defendant Griffith alleges the court
considered notation in the presentence report that
he had been "suspected of illegal activity" for
which he was not tried or convicted.

We note at the outset the presentence report
may include information concerning defendant's
illegal activities even though such activity may not
have resulted in defendant being charged or con-
victed. *People v Burton, supra,* at 735. While we

recognize that the notation to mere "suspicion of illegal activity" is vague, we find no affirmative indication on the record that the court relied upon such information in its sentencing decision. *People v Nelson Johnson,* 58 Mich App 473, 479; 228 NW2d 429 (1975), *People v Clark,* 57 Mich App 339, 346; 225 NW2d 758 (1975). Further, we observe defendant has not properly presented the issue to us on appeal. *Guilty Plea Cases,* 395 Mich 96, 137; 235 NW2d 132 (1975). We thus find insufficient reason to remand for resentencing.

Having reviewed both defendants' various allegations of error and finding none persuasive, we sustain the conviction below.

Affirmed.

J. H. GILLIS, J., concurred.

D. C. RILEY, J. *(concurring in part and dissenting in part).* I write separately to demonstrate my disagreement with the majority's treatment of two issues.

With regard to the instructions on intoxication, I would not reverse where defense counsel invited the supposed error by submitting the now-assailed instructions to the court and by applying them in closing argument. Nor would I comment further on the propriety of the instructions, since any such discussion would be gratuitous.

The issue, however, on which the majority and I completely part company relates to the sentencing of defendant Griffith. After defense counsel examined the presentence report, he specifically requested that the court not consider mention in the report suggesting that defendant had "been suspected of illegal activity". Rather than responding to counsel's objection, the court proceeded to impose a statutorily permissible sentence.

The majority would require an "affirmative indication on the record that the court relied upon such information in its sentencing decision". I would hold that once the judge is "asked to disregard any of the allegations in the report", *People v Lee,* 391 Mich 618, 637; 218 NW2d 655 (1974), the onus shifts to the court either to state that it is disregarding the allegations or to determine whether defendant disputes the charges. If defendant denies involvement in "illegal activity" the court "may not rely upon the information contained in the presentence report unless it is amplified by information such as to be persuasive of the validity of the charge there made". *United States v Weston,* 448 F2d 626, 634 (CA 9, 1971).

I would vacate Griffith's sentence and remand for resentencing.