PEOPLE v RIVERA

1. CRIMINAL LAW—IDENTIFICATION—IN-COURT IDENTIFICATION—PRE-TRIAL IDENTIFICATION—SUGGESTIVENESS OF PROCEDURE—ADMIS-SIBILITY.

An in-court identification of a defendant is inadmissible only if, under the totality of the circumstances, that identification is unreliable, even where the pretrial identification procedure is unnecessarily suggestive.

2. CRIMINAL LAW—IDENTIFICATION—PRETRIAL IDENTIFICATION—DUE PROCESS—SUGGESTIVENESS OF PROCEDURE.

It must be decided whether a pretrial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification in order to determine whether due process requirements were met.

3. CRIMINAL LAW—IDENTIFICATION—LINEUP—DIFFERENCES IN HEIGHT.

The reliability of an identification is not undermined by the fact that the defendant was the shortest in height of the partici-pants in a lineup where the differences in height were not striking.

4. CRIMINAL LAW—IDENTIFICATION—LINEUPS—IDENTIFYING CHARAC-TERISTICS—CLEAN SHAVENNESS—FACIAL HAIR.

An identification process was not rendered unfair by the fact that the defendant did not have a beard or mustache and the other participants in a lineup did, where clean-shavenness was not one of the characteristics listed in the original eyewitness description; the ease with which such a characteristic can be

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 234, 341, 452.

29 Am Jur 2d, Evidence §§ 367–372, 1143.

Admissibility of evidence as to extrajudicial or pretrial identifica-tion of accused. 71 ALR2d 449.

[3, 4] 21 Am Jur 2d, Criminal Law § 368.

29 Am Jur 2d, Evidence § 371 *et seq.*

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

[5] 50 Am Jur 2d, Larceny §§ 174, 175.

created or destroyed counsels generally against relying on it in making identifications.

5. Criminal Law—Larceny—Instructions to Jury—Specific Intent—Presumptions.

> An instruction to a jury in a trial for larceny in a building, that they could presume a defendant intended the natural consequences of his acts if in their judgment the evidence justified such an inference, was not improper; such instruction permitted but did not require the jury to find from the evidence that the defendant had the specific intent required for a conviction of larceny.

Appeal from Saginaw, Eugene Snow Huff, J. Submitted Division 3 March 3, 1975, at Grand Rapids. (Docket No. 20391.) Decided May 29, 1975.

Mario R. Rivera was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Michael J. McNamee,* Assistant Prosecuting Attorney, for the people.

*Marc L. Goldman,* Assistant State Appellate Defender, for defendant.

Before: D. E. Holbrook, P. J., and Bronson and M. J. Kelly, JJ.

Bronson, J. On January 18, 1974 defendant-appellant, Mario Rivera, was convicted after jury trial of larceny in a building, MCLA 750.360; MSA 28.592. He was sentenced on March 18, 1974 to a term of from 2-1/2 to 4 years in prison and appeals by right. Because he presents solely legal issues, we omit factual background.

Eyewitnesses to the crime described the larcenist as Mexican-American, 5 feet 2 inches tall, and 130 pounds. One of the eyewitnesses also men-

tioned that the person he saw had a tattoo on his right arm. A lineup was conducted two days after the larceny occurred, after Rivera had been taken into custody, and in the presence of counsel. Rivera and five other male prisoners were viewed by four eyewitnesses. All lineup participants were of Mexican-American descent. All wore similar uniforms. Rivera and one of the other participants were clean-shaven; the others sported facial hair of varying style and type. Rivera was the shortest participant. Four of the others were approximately three or four inches taller than Rivera and the remaining participant—at over six feet—was considerably taller than the others. All wore short-sleeved shirts, clearly revealing Rivera's tattooed arms. Tattoos were not visible on the others.[1]

Rivera renews his claim, first raised below, that this lineup was so suggestive that it denied him a fair trial. After conducting an evidentiary hearing, the trial judge concluded that the lineup was not unduly suggestive. The lawyer representing Rivera at the lineup did not at that time object to the suggestiveness of the procedure or request that other participants or alternative procedures be utilized.

Though the test has been variously stated,[2] it is

---

[1] The prosecutor maintains that other lineup participants had tattoos on their arms. Rivera disputes this. The record does not clearly resolve the question. We assume for purposes of this appeal that Rivera was the only lineup participant with visible tattoos.

[2] In *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), the United States Supreme Court held that due process is violated whenever an identification procedure is "unnecessarily suggestive and conducive to irreparable mistaken identification". *Stovall, supra,* at 302. This test was adopted by our Supreme Court in *People v Hallaway,* 389 Mich 265, 271; 205 NW2d 451 (1973), as stated in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973): "Unnecessarily suggestive and conducive to irreparable misidentification procedures deny due process." *Anderson, supra,* at 169.

In *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968), the test was restated: Due process is violated only if the

now well settled that when a pretrial identification procedure fails to comport with due process requirements, any in-court identification is necessarily rendered suspect.[3] To determine whether due

---

"identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification". *Simmons, supra,* at 384. The *Simmons* formulation was adopted by our Supreme Court first in *People v King,* 384 Mich 310, 313; 181 NW2d 916 (1970), and again in *People v Lee,* 391 Mich 618, 626; 218 NW2d 655 (1974). *See also, People v Prince,* 54 Mich App 699, 701–702; 221 NW2d 598 (1974).

Still later, in *Neil v Biggers,* 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972), the United States Supreme Court held that even where an identification procedure is unnecessarily suggestive, an in-court identification is inadmissible only if, under the "totality of the circumstances", that identification is unreliable. *Biggers, supra,* at 199. Several factors are listed which must be "considered in evaluating the likelihood of misidentification". *Id.* The *Biggers* approach was adopted in Michigan in *People v Solomon,* 47 Mich App 208, 216; 209 NW2d 257 (1973) (LESINSKI, C. J., dissenting), *rev'd,* 391 Mich 767 (1974) (adopting dissent of LESINSKI, C. J.).

[3] There are two, quite distinct, kinds of possible lineup violations. One involves conducting a lineup in the absence of counsel. The other involves utilizing lineup procedures which are impermissibly suggestive. Where denial of counsel is the problem, an in-court identification is *inadmissible* only if it is found to be based on a counsel-less out-of-court identification *and* the in-court identification is tainted by the out-of-court identification such that there is no "independent basis" for the in-court identification. *United States v Wade,* 388 US 218, 242; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), *Anderson, supra,* at 169. Direct evidence of the out-of-court identification is *per se* excluded. *Gilbert v California,* 388 US 263, 273; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), *Anderson, supra,* at 169. *See also, People v Hallaway, supra,* at 268–270.

The *Wade* independent basis. analysis is not used by the United States Supreme Court in cases involving due process violations. Suggestiveness is balanced against reliability instead. *See Stovall, supra, Simmons, supra, Biggers, supra.* However, prior Michigan cases have applied an independent basis test to due process claims. *People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975), *People v Fossey,* 41 Mich App 174; 199 NW2d 849 (1972).

In addition, the applicability of the *Gilbert per se* exclusionary rule to cases involving pretrial identifications found to deny due process is not absolutely certain—in the United States Supreme Court at least. Compare *Foster v California,* 394 US 440; 89 S Ct 1127; 22 L Ed 2d 402 (1969) [direct testimony of suggestive pretrial identification admitted at trial, conviction reversed], with *Neil v Biggers, supra* [direct testimony of suggestive pretrial identification admitted at trial, conviction affirmed]. However, we are confident that our Supreme Court is prepared to apply the *Gilbert per se* exclusionary rule to exclude

process requirements were met here, we must decide whether—in the language of the most recent Michigan Supreme Court pronouncement on the subject:

"The * * * identification procedure was *so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.*" *People v Lee,* 391 Mich 618, 626; 218 NW2d 655 (1974). (Emphasis in original.)

Rivera must prove that the lineup was impermissibly suggestive, since he was represented by counsel at the lineup. *People v Young,* 21 Mich App 684, 694; 176 NW2d 420 (1970); *People v Curtis,* 34 Mich App 616; 192 NW2d 10 (1971). Rivera has not persuaded us that the identification procedure involved in this case violated due process standards.

That Rivera was the shortest lineup participant does not undermine the reliability of the identification. *People v Wilson,* 20 Mich App 410, 413; 174 NW2d 79 (1969), cited by defendant, states that a difference in height is alone sufficient to render a lineup impermissibly suggestive. However, that statement is dictum, since the Court reversed Wilson's conviction on other grounds. Compare *People v Lloyd,* 5 Mich App 717, 724; 147 NW2d 740 (1967), *People v Herrera,* 42 Mich App 617, 620; 202 NW2d 515 (1972). Its conclusion on the lineup issue is more properly read as an admonition to the trial judge that direct evidence of the lineup not be allowed on retrial. The height differences

direct testimony of suggestive out-of-court identifications. *People v Jackson,* 391 Mich 323, 339; 217 NW2d 22 (1974) [direct evidence of suggestive pretrial identification admitted at trial, on remand, trial court is directed to apply rules set forth in *Anderson* in deciding whether evidence is admissible].

We do not consider whether *Gilbert* is applicable here, given our holding that the lineup was not impermissibly suggestive.

involved in this case are not striking. Five of the six participants, including Rivera, are approximately the same height.

That other lineup participants had beards or mustaches and Rivera did not does not make the identification procedure unfair. Clean-shavenness was not one of the characteristics listed in the original eyewitness description; therefore, we must assume, without evidence to the contrary, that this characteristic was not controlling in the minds of the identifying witnesses. Moreover, one other lineup participant was also clean-shaven and the mustaches worn by two of the others were not dominant facial features, to say the least. Finally, the ease with which such a characteristic can be created or destroyed counsels generally against relying on it in making identifications;[4] again, absent any suggestion in the record to the contrary, we must assume that the witnesses did not rely on this characteristic in making their identifications.

That Rivera was the only lineup participant with tattoos on his arms does not adversely affect the fairness of the lineup either, inasmuch as the only eyewitness who even mentioned that the suspect had tattoos did not identify Rivera at the lineup. Moreover, none of the other eyewitnesses indicated that the presence of tattoos on Rivera's arms made any difference in their identification of him at the lineup.

What was said in *People v Lloyd, supra,* at 724–725, and repeated in *People v Herrera, supra,* at 621–622, deserves to be reiterated:

---

[4] Indeed, several of the eyewitnesses in this case, when identifying Rivera at trial, mentioned that his growing a mustache had not affected their ability to recognize him as the one who committed the larceny.

"Lineups are conducted in police stations, and the persons who participate in the lineup are taken from those who are being held in custody. It would be unusual indeed if the police had five persons with similar physical characteristics locked up in the same jail. Moreover, the purpose of a lineup is identification. If the defendant is the tallest man in the lineup, and if he believes that this impairs the validity of the identification, he should see that the jury is apprised of that fact. This is a question of the weight to be given the lineup identification, not its admissibility. It presents no basis for a new trial."

Considering the "totality of circumstances", we are of the opinion that the lineup conducted in this case was not impermissibly suggestive and did not deny Rivera due process of law.

Rivera's other two[5] assignments of error involve jury instructions. His claim that the jury was improperly instructed on specific intent is unfounded. The trial judge informed the jury that it was their duty to determine whether Rivera possessed the requisite felonious intent. In order to aid in that determination, the judge instructed the jury that they could presume that Rivera intended the natural consequences of his acts if in their judgment the evidence justified such an inference. The trial judge did not tell the jury that intent could be proved solely from the acts of defendant. This was quite plainly a permissive inference, not a mandatory presumption. The instruction did not run afoul of the principles stated in *People v Jordan,* 51 Mich App 710; 216 NW2d 71 (1974). The jury was permitted but not required to find from the evidence that Rivera had the specific intent to commit larceny. This was proper. *People v Jordan, supra,* at 716.

---

[5] Rivera's contention that the district court was without jurisdiction to bind him over for trial is without merit. *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

Rivera's dissatisfaction with the trial judge's instruction on reasonable doubt is answered by reference to *People v Cox,* 70 Mich 247; 38 NW 235 (1888), where the Supreme Court approved an instruction on reasonable doubt similar in all important respects to that given here.

Affirmed.